JOSEPH R. LAMAGNA (State Bar No. 246850)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@hooperlundy.com

ANDREA L. FREY (State Bar No. 311913)
BENJAMIN Y. LIN (State Bar No. 326703)
**HOOPER, LUNDY & BOOKMAN, P.C.**
44 Montgomery Street, Suite 3500
San Francisco, California 94104
Telephone: (415) 875-8500
Facsimile: (310) 362-8937
E-Mail: afrey@hooperlundy.com
          blin@hooperlundy.com

RACHAEL PONTIKES (*Pro Hac Vice*)
**BLANK ROME LLP**
444 W. Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
E-Mail: rachael,pontikes@blankrome.com

SHANNON E. MCCLURE (*Pro Hac Vice*)
**BLANK ROME LLP**
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
E-Mail: shannon.mcclure@blankrome.com

Attorneys for Defendants MOCHI HEALTH CORP.,
MOCHI MEDICAL CA P.C., MOCHI MEDICAL
P.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| NOVO NORDISK A/S;<br>NOVO NORDISK INC.,<br><br>                 Plaintiffs;<br><br>        vs.<br><br>MOCHI HEALTH CORP.; MOCHI<br>MEDICAL CA P.C.; MOCHI MEDICAL<br>P.A.,<br><br>                 Defendants. | Case No. 5:25-cv-06563-EKL<br><br>**DEFENDANTS' NOTICE OF MOTION<br>AND MOTION TO DISMISS**<br><br>*[Filed concurrently with [Proposed] Order;<br>Request for Judicial Notice; and Decl. of<br>Joseph R. LaMagna]*<br><br>Judge Eumi K. Lee<br><br>Action Filed:        August 4, 2025 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 1, 2026, at 10:00 a.m. at San Jose Courthouse, Courtroom 7, 4th Floor, 280 South First Street, San Jose, CA 95113, or as soon thereafter as the matter may be heard, Defendants MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., and MOCHI MEDICAL P.A., ("Defendants") will move and hereby do move the Court for an Order dismissing the Second Amended Complaint in its entirety.

Defendants' Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points

and Authorities, Request for Judicial Notice, Declaration of Joseph R. LaMagna, the files and records in this case, and any further written or oral argument as permitted to be presented at the hearing.

The undersigned certifies that the Parties conferred via videoconference prior to Defendants filing their Motion to Dismiss.

DATED:  April 10, 2026                    HOOPER, LUNDY & BOOKMAN, P.C.


By:        */s/ Joseph R. LaMagna*
                 JOSEPH R. LAMAGNA
Attorneys for Defendants MOCHI HEALTH CORP.;
MOCHI MEDICAL CA P.C.; and MOCHI MEDICAL P.A.

DATED:  April 10, 2026                    BLANK ROME LLP


By:        */s/ Rachael Pontikes*
                 RACHAEL PONTIKES (P*ro Hac Vice*)
Attorneys for Defendants MOCHI HEALTH CORP.;
MOCHI MEDICAL CA P.C.; and MOCHI MEDICAL P.A.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     FACTUAL BACKGROUND ......................................................................................2

        A.      Procedural Posture.........................................................................................2

III.    NOVO'S COMPLAINT: AN ATTEMPT TO ELIMINATE COMPOUNDING ........6

IV.     ARGUMENT ..............................................................................................................7

        A.      Legal Standard................................................................................................7

        B.      Novo's SAC Fails to Plead Facts Establishing Article III Standing. ................8

                1.      Novo Fails to Allege an Actual or Imminent Injury. ..........................8

                2.      Novo Fails to Allege Injury Fairly Traceable to Defendants' Conduct. ...............9

                3.      Novo's Alleged Injuries Cannot be Redressed......................................10

        C.      Novo Lacks Statutory Standing Under the Lanham Act.................................11

                1.      Novo and Mochi Are Not Direct Competitors. ..........................................11

                2.      Novo is Outside the "Zone of Interests" Protected by the Lanham Act...............13

                3.      Novo Does Not Establish Proximate Cause for Lanham Act Standing. ..............14

        D.      Novo Fails to Plead Plausible Claims for Relief. ............................................15

                1.      Novo Fails to Plead Lanham Act (Count I), False Advertising (Count II), and Common Law Unfair Competition Claims (Count IV). ...................................16

                        a.      Pleading Failures for Lanham Act and FAL (Counts I and II). ...............17

                                i.      Novo Fails to Allege Literal Falsity (Element 1). ........................17

                                        (a)     Mochi Health's Statements Are Literally True. ...............17

                                        (b)     Novo "Lack of Substantiation" Claim Is Insufficient. ......18

                                ii.     Novo Pleads No Facts Showing Consumer Deception (Elements 2 & 3). ...........................19

                                iii.    Novo Failed to Plead Injury (Element 5). ...................................20

                        b.      Novo Fails to Plead Common Law Unfair Competition (Count IV). .......20

                2.      Novo Fails to Plead a Cause of Action Under the UCL (Count III). ...................21

        E.      The SAC Should Be Dismissed Under Abstention and Primary Jurisdiction.................23

V.    CONCLUSION ...........................................................................................................25

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
No. 17-1551, 2019 WL 4545960 (C.D. Cal. Mar. 27, 2019) ........................................................5, 6, 18

*Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292 (2007) .............................................23, 25

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988).........................................................................................................13

*American Academy of Emergency Medical Physician Group, Inc. v. Envision Healthcare Corp.*,
No. 22-421, 2022 WL 2037950 (N.D. Cal. 2022)................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................7, 8

*Backus v. General Mills, Inc.*, 122 F.Supp.3d 909 (N.D. Cal. 2015)........................................................24

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) ...............................................................16, 20

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019).....................................16, 17, 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................8, 9, 16

*Bronson v. Johnson & Johnson, Inc.*, No. 12-04184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ........19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 182 (1999) .....................................23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................................................................10

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ................................................................23

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) .........................................................................16, 23

*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012).....................................................19

*Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011) .............................................15

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .........................23, 24, 25

*Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024)..............................................................15

*Dyson, Inc. v. SharkNinja Operating LLC*, 2011 WL 13268034..............................................................17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*Eli Lilly & Co. v. Adonis, Inc. d/b/a Henry Meds.*,
No. 25-3536, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ......................................................19

*Eli Lilly & Co. v. Mochi Health Corp.*,
No. 25-03534, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025)...............................................8, 9

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
No. 25-3570, 2026 WL 639976 (N.D. Cal. Feb. 3, 2026)...............................................14, 15

*Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504 (2015)...............................................22

*Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377 (1992) ...........................................................23

*Genus Lifesciences Inc. v. Lannett Co.*, 2019 WL 4168958 (N.D. Cal. Sept. 3, 2019) ...............20

*Grafilo v. Soorani*, 41 Cal. App. 5th 497 (2019)...........................................................................25

*U.S. ex rel. Integra Med Analytics, LLC v. Providence Health & Servs.*,
854 Fed. Appx. 840 (9th Cir. 2021) ...............................................................15, 16, 18, 21

*Intuit Inc. v. HRB Tax Grp., Inc.,* No. 24-253, 2025 WL 1168897 (N.D. Cal. Apr. 22, 2025) ......16, 17, 19

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)...............................................................15

*Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352 (2023) ...............................................25

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-3762, 2014 WL 572290 (N.D. Cal. Feb. 11,
2014)...............................................................16, 23

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) ...................................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ...............................................................11, 12, 13, 14

*Linder v. United States*, 268 U.S. 5 (1925) ...................................................................................24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...............................................................................................8

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480 (2011)...................................23

*McGinity v. Procter & Gamble Co.,* 69 F.4th 1093 (9th Cir. 2023) ...............................................20

*Med. Bd. of Cal. v. Chiarottino*, 225 Cal. App. 4th 623 (2014)...................................................25

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)...........................................................................15

*Novo Nordisk A/S et al., v. Aios Inc., et al.*,
4:25-cv-06560-YGR (N.D. Cal. March 10, 2026) ...............................................14, 15, 21

Case No. 5:25-cv-06563-EKL
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*Novo Nordisk A/S v. Amble Health, Inc.*,
   No. 25-01048, 2026 WL 776100 (N.D. Ohio Mar. 19, 2026) .................................................... *passim*

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937 (S.D. Cal. 2016) ...........20

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004) .....................................................................24

*Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935 (N.D. Cal. 2014).......................................................24

*In re Sagent Tech., Inc., Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003).........................................................................................9

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-1280, 2022 WL 20286688 (N.D. Cal. Feb. 24,
   2022).........................................................................................................................................19

*Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013).....16, 19

*Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609 (2012) ...................................................23

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ...................................................................................................................10

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)....................................18

*Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672 (C.D. Cal. Aug. 19, 2019).......................17, 19

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ............................................16, 21

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,
   18-04189, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019)...........................................................13, 14, 20

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
   No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022).........................................................12, 13, 19

*Thompson v. Western States Med. Ctr.*,
   535 U.S. 357 (2002) .............................................................................................................5, 18

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .............................................................................................................8, 9

*Trump v. New York Times Co.*,
   No. 25-2487, 2025 WSL 2680597 (M.D. Fla. Sept. 19, 2025).............................................................1

*Turner v. City & County of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015)...........................................................................................................8

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..............................................................15

**Statutes**

21 U.S.C. § 352(bb)..........................................................................................................................6, 24

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

21 U.S.C. § 353a ............................................................................................................ *passim*

21 U.S.C. § 360eee ...................................................................................................................13

Cal. Bus. & Prof. Code § 2004 ...................................................................................................4

Cal. Bus. & Prof. Code § 2242 ............................................................................................4, 10

Cal. Bus. & Prof. Code § 2264 ...................................................................................................4

Cal. Bus. & Prof. Code § 2400 ............................................................................................4, 25

Cal. Bus. & Prof. Code § 4301(f) ..............................................................................................6

Cal. Bus. & Prof. Code § 17200 ..............................................................................................21

Cal. Bus. & Prof. Code § 17204 ..............................................................................................21

Cal. Code Regs., Title 16, § 1735.2 ..........................................................................................6

Cal. Health & Saf. Code § 110390 .....................................................................................6, 24

California Pharmacy Practice Act ..............................................................................................6

California False Advertising Law ..................................................................................... *passim*

California Unfair Competition Law .............................................................................................7

Drug Supply Chain Security Act ...............................................................................................13

Food, Drug, and Cosmetic Act ........................................................................................ *passim*

Lanham Act ....................................................................................................................... *passim*

Medical Practice Act .............................................................................................................4, 25

**Court Rules**

Federal Rule 8 .................................................................................................................. *passim*

Federal Rule 9(b) ............................................................................................................. *passim*

Federal Rule 12(b)(1) ..................................................................................................................7

Federal Rule 12(b)(6) ...................................................................................................7, 15, 16, 17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

## I.     PRELIMINARY STATEMENT

Novo Nordisk A/S and Novo Nordisk's ("Novo's") Second Amended Complaint ("SAC") is its third attempt to plead viable claims against Defendants Mochi Health Corp., Mochi Medical CA P.C., and Mochi Medical P.A. This action is part of Novo's broader effort to suppress lawful compounding by repackaging impermissible private enforcement of regulatory and policy disputes as purported false advertising and unfair competition claims. The SAC opens with a nearly 100-paragraph critique of the compounding industry as a whole[1]—replete with cherry-picked adverse events that have nothing to do with Defendants—before finally turning to allegations purportedly directed at Defendants. The structure of the SAC underscores the core flaw in Novo's case: Novo seeks to eliminate compounding, but it has sued entities that do not compound drugs, and that do not and cannot control what drugs physicians prescribe. The Mochi Medical entities are a physician-owned professional corporations whose Providers exercise independent medical judgment in treating patients. Mochi Health is a management services organization that provides non-clinical administrative support. Neither entity manufactures, compounds, sells, or distributes any drug. Like all licensed physicians, Mochi Medical's doctors determine, based on individualized patient assessments, a treatment plan, which includes a decision whether to prescribe an FDA-approved drug, a compounded medication, a different treatment altogether, or no drug at all. Independent pharmacies then fill any prescriptions.

At bottom, Novo attempts—but fails—to plausibly allege that Defendants diverted its business. But physicians, not drug manufacturers, decide what treatments their patients receive. Novo cannot plead around that legal reality. Because the SAC does not (and could not) allege facts showing that any statement or act by Mochi Medical or Mochi Health caused a doctor to prescribe (or a patient to receive) a compounded drug instead of a Novo drug, it fails to allege causation, injury, or redressability. Indeed, nowhere in the SAC's lengthy catalog of generalized concerns does Novo identify a single likely lost sale, prescription, or transaction attributable to Mochi Medical or Mochi Health—nor could it, given the existing regulatory

---

[1] *See, e.g.*, *Trump v. New York Times Co.*, No. 25-2487, 2025 WL 2680597, *2 (M.D. Fla. Sept. 19, 2025) ("As every lawyer knows (or is presumed to know), a complaint is not a public forum for vituperation and invective—not a protected platform to rage against an adversary. A complaint is not a megaphone for public relations or a podium for a passionate oration at a political rally or the functional equivalent of the Hyde Park Speakers' Corner.").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

system. That failure is fatal, because there is no harm to Novo. Without allegations of a concrete and particularized injury traceable to Defendants' conduct, Novo lacks Article III standing. Similarly, Novo cannot satisfy the standing, causation, or injury elements of its Lanham Act, UCL, FAL, or common law unfair competition claims.

Novo's corporate practice of medicine theories fare no better. The SAC relies on conclusory labels, not facts, claiming that either Mochi Medical or Mochi Health engaged in unlawful, unfair, or fraudulent conduct. Even assuming standing, the SAC fails to meet Rule 8, and since Novo's claims sound in fraud, Rule 9(b), because it does not plausibly allege who did what, when, or how any alleged conduct injured Novo. Stripped of its rhetoric, the SAC is an attempt to use litigation to intimidate prescribers who send prescriptions to the compounders and restrict lawful treatment options available to physicians and patients. The law does not permit this. These issues were raised before, and Novo has since amended its complaint to try to address them. But after multiple attempts, Novo cannot plead facts establishing subject matter jurisdiction, standing, or a viable claim for relief. Thus, the SAC should be dismissed with prejudice and leave to amend is not appropriate.

## II.    FACTUAL BACKGROUND

### A.    Procedural Posture

Novo filed its original complaint on August 4, 2025. D.I. 1. Among other claims, the initial complaint alleged that Mochi's website includes "Novo Nordisk's Ozempic® and Wegovy® marks and an image of an authentic Ozempic® injector pen despite, upon information and belief, not offering for sale nor prescribing Novo Nordisk's FDA-approved Ozempic® and Wegovy® medicines." D.I. 1 ¶ 147. As explained later, Novo has withdrawn this baseless allegation as untrue, which was Novo's main basis for claiming that Mochi Health misleadingly used Novo's marks to promote compounded drugs. D.I. 1 ¶¶ 146, 148.

On October 6, 2025, Defendants moved to dismiss the original complaint. D.I. 23. Rather than opposing that motion, Novo filed a First Amended Complaint on October 27, 2025. D.I. 31. In doing so, Novo did not yet retreat from its allegations regarding the prescribing of Novo's products; instead, it amplified them—alleging categorically that Mochi Providers "never" prescribe Novo's drugs to patients. *Id.* ¶ 157. Novo again alleged, "upon information and belief," that Mochi Health was "neither offering for sale nor prescribing Novo Nordisk's FDA-approved … medicines." *Id.* ¶ 177. Through a meet and confer

among counsel, defense counsel provided evidence and explained that Mochi Providers do—in fact—prescribe Novo's drugs, including Wegovy and Ozempic. *See* Declaration of Joseph R. LaMagna in Support of MTD and Request for Judicial Notice, ¶ 2. Novo advised that it intended to amend its complaint again.

Nearly four months later, Novo filed its SAC, reflecting only a few substantive changes: (1) removing the word "never" from ¶ 157 (thus demonstrating agreement that Mochi Providers do prescribe Novo's products), and (2) to reframe the images of Novo's drugs on Mochi Health's website. *Compare* D.I. 31 ¶¶ 157, 174-176 *with* D.I. 45 ¶¶ 157, 175-177. Despite Novo's concession that Mochi Providers **do** prescribe Novo's drugs, later portions of Novo's SAC still continue to allege that Mochi Health's website uses pictures of Novo's drugs to steer patients toward compounded drugs and imply a false "association" between Novo's drugs and compounded drugs. D.I. 45 ¶ 177. However, the SAC does not identify any facts or examples of a patient seeking a Novo drug who was diverted to a compounded drug because of Mochi Health's advertising, much less alleged control over physicians deciding between branded and compounded drugs. And Novo entirely ignores the most plausible reason for Novo's drugs appearing on Mochi Health's website—that Mochi Providers prescribe Novo's drugs.

### 1.    Mochi Medical Entities: Physician-Owned Corporations.

Mochi Medical P.A. (a Florida professional association) and Mochi Medical CA P.C. (a California professional corporation) (collectively "Mochi Medical") are physician-owned entities providing healthcare services to patients, including diagnosis, treatment, and prescribing through licensed physicians and other healthcare professionals (collectively "Mochi Providers"). D.I. 45 ¶ 30; Request for Judicial Notice, Exs. A, B.[2] Dr. Rana Ahmad is the Director/CEO of Mochi Medical P.A. and Mochi Medical CA P.C. *Id.*

### 2.    Mochi Health: A Telehealth Company Providing Management Services.

Mochi Health Corp. ("Mochi Health") is a management services organization ("MSO") offering administrative and technological infrastructure and support to Mochi Providers, including a virtual telehealth platform. D.I. 45 ¶¶ 30, 118; Ex. C. Mochi Health licenses its proprietary telehealth platform to the Mochi Providers, facilitating the Mochi Providers' virtual care and treatment of patients. *Id.* Mochi Health manages a website on behalf of itself and the Mochi Providers, informing prospective patients of the

---

[2] All citations to exhibits are to the exhibits of Defendants' Request for Judicial Notice.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

Mochi Providers' services and listing certain drugs those Mochi Providers may prescribe. D.I. 45 ¶ 118; Ex. D. These drugs include Novo's semaglutide-based drugs like Wegovy and Ozempic; Novo's liraglutide-based drugs; Eli Lilly and Company's ("Lilly") tirzepatide-based drugs; non-glucagon-like peptide 1; as well as compounded drugs. *Id.* Mochi Health does not provide medical services, compound drugs, or—unlike Novo—manufacture drugs. Ex. C. Nowhere in the SAC does Novo allege that Mochi Health is a pharmacy, or otherwise dispenses any medications.

Mochi Health does not guarantee that patients receive any drug. Instead, patients must consult with Mochi Providers who create treatment plans based on individualized need that *may* include prescription drugs. Ex. F. Mochi Providers assess each patient's medical needs to determine what, if any, prescription drug is medically appropriate, including FDA-approved drugs and compounded drugs. *Id.* Whether a patient receives a given drug may also depend on their insurance. *Id.* Providers, not Mochi Health, change prescription drug dosages or formulations based on a patient's individual clinical need. Ex. G (instructing patients to discuss dosage with providers on case-by-case basis; cited D.I. 45 ¶ 141). Mochi Health's website states that compounded drugs are not FDA approved (Exs. D, H), and notes that these treatments are prescribed at the discretion of a licensed provider, if appropriate. Exs. F, G. Patients are consistently encouraged to consult with their doctors for the most suitable course of care. Ex. H. Dr. Myra Ahmad, a graduate of Washington School of Medicine, is Mochi Health's co-founder/CEO. D.I. 45 ¶ 119; Ex. E.

**B.      The Medical Board of California Enforces the Corporate Practice of Medicine.**

The Medical Board of California ("Medical Board") regulates the practice of medicine under the Medical Practice Act ("MPA"). Cal. Bus. & Prof. Code § 2004. The MPA permits the Medical Board to set professional standards of conduct and investigate and adjudicate alleged violations. *Id.* § 2220. The MPA also affirms that physicians must exercise their independent medical judgment in the care and treatment of patients. *Id.* § 2242. The Medical Board prosecutes aiding and abetting the unauthorized practice of medicine (*see* Cal. Bus. & Prof. Code § 2264); corporate practice of medicine ("CPOM") (*see id.* § 2400; Ex. I [describing the Medical Board's CPOM enforcement]); and breaches of the standard of care by furnishing prescription drugs without an appropriate prior examination and medical indication. Cal. Bus. & Prof. Code § 2242. The Board's authority extends to "any individual, partnership, corporation, limited liability company, or other organization" accused of violating the MPA, not just physicians. *Id.* § 2032.

C.    **Federal and State Agencies Oversee Drug Compounding.**

Federal and state law both recognize compounding as an essential, regulated pharmacy practice. Contrary to Novo's suggestion that compounded drugs are "unsafe" or "unlawful," compounding is a legitimate, traditional practice, expressly permitted and regulated by FDA and state pharmacy boards.

1.    **FDA Permits and Regulates Compounding.**

Congress specifically exempted compounded drugs from premarket approval in Section 503A of the FDCA, recognizing that requiring FDA approval for all compounded drugs "would, as a practical matter, eliminate the practice of compounding." *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 369 (2002) ("*Western States*"); *see also* 21 U.S.C. § 353a ("Section 503A"). Drug compounding is a legitimate, traditional component of the practice of pharmacy, a "process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a drug tailored to the needs of an individual patient." *Western States,* 535 U.S. at 361 (2002). Doctors prescribe compounded drugs if one-size-fits-all manufactured drugs are inappropriate to treat a patient. *Id*. There is no requirement that "compounded drugs be different for every patient" or that "personalized" means bespoke formulation for each individual. *Allergan USA, Inc. v. Imprimis Pharms., Inc.*, No. 17-1551, 2019 WL 4545960, *11 (C.D. Cal. Mar. 27, 2019).

Congress amended the FDCA to add Section 503A in 1997, imbuing the Food and Drug Administration ("FDA") with additional regulatory power to oversee compounding, which had been previously regulated only by the states. *See* 21 U.S.C. § 353a. As compounded drugs serve as an alternative to one-size-fits-all manufactured drugs and allow for "personalized" drugs options, Section 503A exempts compounded drugs from FDA's new drug approval process. *Western States*, 535 U.S. at 369. FDCA's § 337(a) prohibits private causes of action to enforce the FDCA.

Section 503A includes parameters to ensure that compounded drugs remain a safe alternative for patient care. 21 U.S.C. § 353a(b)(1)(A)(i)(II). Section 503A, however, specifically mandates that compounded drugs must use an active pharmaceutical ingredient that is a component of a manufactured drug—such as the semaglutide in Novo's drug. *Id*. While Section 503A generally prohibits compounding "essential copies" of manufactured drugs, it authorizes variations made to meet patient need as determined by a prescriber. 21 U.S.C. § 353a(b)(2). FDA issued extensive guidance regarding the variations that compounding pharmacies may make, including the very modifications that Novo is complaining about, *i.e.*,

altering the dosage strength or adding active ingredients. *See id*. Just as with manufactured drugs, compounded drugs are only dispensed in response to a prescription. But the compounding regulations go even further than that—under 503A, the doctor issuing the prescription must designate specifically that a ***compounded drug*** (not the manufactured one) is necessary for that particular patient. *See id.* § 353a(a)(2)(A)-(B) (requiring compounded drugs be compounded pursuant to a patient-specific prescription or based on a history of prescriptions for a specific patient). A compounded drug is thus "personalized" as a matter of law when a prescriber determines that a variation from the commercially available product is necessary for the patient, and issues a corresponding prescription. 21 U.S.C. § 353a(a)(2)(A)–(B). There is no legal requirement that "personalized" compounding must involve a unique formulation for every patient, nor does the use of preset dosage options violate federal or state law. *Allergan*, 2019 WL 4545960, *11.

The FDCA also prohibits the false or misleading promotion of compounded drugs. *See* 21 U.S.C. § 352(bb) (deeming a compounded drug misbranded if the "advertising or promotion" of the drug is "false or misleading in any particular"). In addition to FDA, state boards of pharmacy have concurrent jurisdiction to regulate compounding. The California State Board of Pharmacy ("Pharmacy Board") enforces the California Pharmacy Practice Act, prohibiting pharmacies from engaging in false or misleading advertising (Cal. Health & Saf. Code § 110390), or committing a deceitful act. Cal. Bus. & Prof. Code § 4301(f). The Pharmacy Board also regulates how, when, and which drugs may be compounded. Cal. Code Regs. tit. 16, § 1735.2. California law does not require compounded drugs to be "personalized" in the manner Novo suggests (D.I. 45 ¶¶ 138-142, 140-44, 166), nor does it prohibit the use of standardized prescription forms.

### D.    GLP-1s: A General Class of Drugs.

Novo's semaglutide-based drugs belong to the general class of drugs known as glucagon-like peptide 1 ("GLP-1s") receptor agonists. Ex. J. In addition to semaglutide-based drugs, GLP-1s include liraglutide-based drugs (manufactured by Novo and Hikma Pharmaceuticals) (Ex. K); tirzepatide-based drugs manufactured by Lilly; and dulaglutide-based drugs. Ex. J. Thus, GLP-1 is a general term, referring to an entire class of drugs, to which Novo has no trademark rights.

### III.    NOVO'S COMPLAINT: AN ATTEMPT TO ELIMINATE COMPOUNDING

Rather than curing the complaint's deficiencies, Novo simply repackages the same allegations under the umbrellas of false advertising, deceptive practices, and unfair competition. As with the other complaints,

the SAC again rests on selectively quoted statements from Mochi Health's website and anecdotal Reddit posts, not on any newly pleaded facts demonstrating competitive injury or unlawful conduct. Specifically, Novo alleges the following three[3] core theories:

- **Personalization Theory:** Novo alleges that Mochi falsely advertises compounded drugs as "personalized" for individual patients because, according to Novo, compounded drugs are actually mass-produced with standardized dosages. D.I. 45 ¶¶ 160-166.
- **Safety and Effectiveness Theory:** Novo alleges that Mochi implies compounded drugs are comparable in quality, safety, and effectiveness to Novo's drugs. D.I. 45 ¶¶ 171–181, 186–191.
- **Use of Clinical Data and Efficacy:** Novo alleges Mochi references clinical studies applicable only to Novo's drugs, misleadingly suggesting compounded drugs have been similarly tested. D.I. 45 ¶¶ 181-185.

The SAC asserts the same causes of action as Novo's earlier pleadings: (1) false and misleading advertising under the Lanham Act against Mochi Health (Count I); (2) false advertising under California's False Advertising Law ("FAL") against Mochi Health (Count II); (3) unfair competition under California's Unfair Competition Law ("UCL") against Mochi Health and Mochi Medical (Count III); and (4) unfair competition under California common law against Mochi Health and Mochi Medical (Count IV). Novo's continued reliance on generalized grievances about compounding and public health dooms any concrete, particularized injury traceable to Defendants' conduct. The SAC should be dismissed with prejudice as Novo has amended twice and failed to plead either Article III standing or Lanham Act statutory standing, and has not met the pleading requirements for the Lanham Act, UCL, FAL, or common law unfair competition.

## IV.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 8 requires a plaintiff's pleading to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts accept all well-pleaded factual allegations as

---

[3] Novo includes four categories in its SAC; those categories, however, are repetitive. Defendants will therefore use the above three categories here.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

true, they do not accept conclusory statements, unwarranted factual inferences, or legal conclusions. *Iqbal*, 556 U.S. at 678. A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* Plaintiffs may not rely on "information and belief" as a substitute for factual allegations, unless the facts are uniquely within the defendant's possession and control. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences … are insufficient to avoid" dismissal. *Turner v. City & County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)). While legal conclusions may provide a framework for a complaint, "they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

B.    **Novo's SAC Fails to Plead Facts Establishing Article III Standing.**

Courts have rejected standing based on the same alleged conduct. In *Eli Lilly & Co. v. Mochi Health Corp.*, the court dismissed nearly identical claims premised on alleged reputational harm and patient diversion arising from Mochi Health's marketing of compounded GLP-1 products, finding no concrete injury sufficient to confer Article III standing. No. 25-03534, 2025 WL 2998166, *3–6 (N.D. Cal. Oct. 24, 2025) (Corley, J.). Another court dismissed Novo's "personalization" Lanham Act claim against a different telehealth company, finding its allegations of reputational harm and patient diversion too speculative to sustain injury in fact. *Novo Nordisk A/S v. Amble Health, Inc.*, No. 25-01048, 2026 WL 776100, *2–4 (N.D. Ohio Mar. 19, 2026). As *Amble* and *Mochi* explained, a manufacturer must allege ***facts*** to support its conclusion that Defendants caused patients to doubt the quality of the plaintiff's drugs. *Amble*, 2026 WL 776100, *3; *Mochi*, 2025 WL 2998166, *5-6.  Novo does not allege such facts here.

1.    **Novo Fails to Allege an Actual or Imminent Injury.**

Article III imposes on the plaintiff the burden to allege a concrete, particularized injury that is actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). As the Supreme Court made clear, "no concrete harm, no standing," and "an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant…." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-427 (2021).

Novo does not allege facts showing that it suffered a concrete injury attributable to Mochi Medical. Instead, the SAC continues to lump Mochi Medical together with Mochi Health in Counts III and IV,

without identifying any conduct **by Mochi Medical** that allegedly caused Novo harm. The SAC's purportedly "new" allegations do not clarify Mochi Medical's role, or provide any factual basis for treating it as a proper defendant. Novo's undifferentiated pleading fails to allege an injury traceable to Mochi Medical and independently violates Rules 8(a)(2) and 8(b) by depriving Mochi Medical of fair notice of the claims against it. *See In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094–95 (N.D. Cal. 2003). Accordingly, Mochi Medical should be dismissed as a defendant.

As to Mochi Health, Novo alleges two injuries—reputational harm and lost profits—neither of which satisfies Article III. First, Novo's allegations of reputational harm are unsupported by facts showing that dissatisfaction with compounded drugs caused consumers to attribute that dissatisfaction to Novo's drugs. *See Mochi*, 2025 WL 2998166, at *6; *Amble*, 2026 WL 776100, at *2-3. Instead, Novo cites Reddit posts showing that consumers understood they received compounded drugs, and some **preferred Novo's drugs**. D.I. ¶¶ 191-196; Exs. L, M. Far from demonstrating reputational harm, these allegations show that, at least for some consumers, Novo's reputation was enhanced when compared to compounded products. Novo's reliance on general consumer belief survey data (D.I. 45 ¶¶ 82–87) also fails to support its allegations of reputational harm, as generalized confusion cannot establish concrete injury. *TransUnion*, 594 U.S. at 431.

Second, Novo's lost sales allegations are similarly unsupported by facts. The SAC fails to identify a single likely lost sale, lost customer, or any quantifiable economic injury that Novo suffered that is traceable to Mochi Health. *See* D.I. 45 ¶¶ 22, 225–226. Further, Novo abandoned its prior allegation that Mochi providers "never" prescribe Novo's products. *Compare* D.I. 31 ¶ 157 *with* D.I. 45. This concession fatally undermines Novo's theory that Mochi Health's conduct has caused Novo to lose sales; if anything, Mochi Health's platform actually increases access to Novo's drugs. Finally, Novo cites Reddit posts claiming that consumers purchased compounded medications because their insurance did not cover Novo's products, without mentioning that any ads influenced their decision. Exs. L, M. Absent allegations identifying a patient who would have received a Novo drug but for Defendants' conduct, Novo's lost sales theory remains speculative and insufficient to confer standing. *Twombly*, 550 U.S. at 570.

### 2. Novo Fails to Allege Injury Fairly Traceable to Defendants' Conduct.

Even if Novo's generalized allegations were sufficient to allege some injury (they are not), the SAC still fails to allege facts showing that any injury to Novo is "fairly traceable" to each Defendant, as required

by Article III. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–43 (1976). In *Amble*, the court dismissed Novo's complaint for lack of Article III standing, holding that the defendant's advertisements were not causally linked to any alleged harm. 2026 WL 776100, *2-3. There, as here, Novo fails to plead that the defendant's customers failed to achieve their desired results on compounded drugs, **and** therefore drew negative conclusions about Novo's products. *Id.*

The Supreme Court has made clear that standing is lacking where the alleged injury results from the independent decisions of third parties, not the challenged conduct. *Id.* The same defect is present here. Novo does not allege facts showing that Mochi Health or Mochi Medical directed, dictated, or interfered with physicians' independent prescribing decisions, or that any patient would have received a Novo drug but for Defendants' conduct. To the contrary, Novo has conceded that Mochi Providers **do**—in fact—prescribe Novo's drugs. *Compare* D.I. 31 ¶ 157 *with* D.I. 45 ¶ 157. That concession demonstrates that Novo's claimed injuries depend on speculative assumptions about independent third-party decision-making, not on Defendants' conduct. Any alleged loss of sales or reputational harm to Novo therefore necessarily depends on the independent medical judgment of prescribers. Prescribers, not Mochi Health or Mochi Medical, are legally required to determine whether a particular drug is medically appropriate for a patient. *See* 21 U.S.C. § 353a(a); Cal. Bus. & Prof. Code § 2242. Novo has not identified a single instance in which Defendants directed or overrode a prescriber's decision, nor any facts showing that Defendants' conduct, rather than intervening third-party actions, caused the alleged harm.

### 3.    Novo's Alleged Injuries Cannot be Redressed.

Finally, Novo fails to establish that its alleged injury is likely to be redressed by a favorable decision of the court, as required by Article III. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Novo's alleged lost profits are not redressable because any change in sales would still depend on the independent medical judgment of prescribers, who are legally required to select medications based on individual patient needs and are not parties to this action. *See* Cal. Bus. & Prof. Code § 2242; 21 U.S.C. § 353a(a). Even if the Court were to enjoin Mochi Health's advertising or business practices, the SAC offers no basis to conclude that prescribers would choose Novo's products over other drugs. Any alleged economic injury would therefore persist. Novo's allegations of reputational harm are likewise not redressable because the SAC pleads no facts showing that injunctive or monetary relief would alter consumer perception of Novo's drugs

or providers' willingness to prescribe them. Because Novo's alleged injuries depend on the independent actions of third parties beyond this Court's control, redressability is lacking and Article III standing cannot be established.

### C.    Novo Lacks Statutory Standing Under the Lanham Act.

Lanham Act imposes a more demanding standing inquiry than Article III, requiring a plaintiff to satisfy both the "zone of interests" and "proximate cause" prongs articulated in *Lexmark*.[4] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). That is, the plaintiff must plausibly allege (1) an injury to a commercial interest in reputation or sales, and (2) that the injury flowed directly from the alleged deception because consumers withheld trade from the plaintiff. *Id.* at 133. Novo's SAC fails to plead direct competition, a concrete commercial injury, or proximate causation—defects on which courts routinely dismiss Lanham Act claims. The challenge of showing of harm is greater, if the plaintiff is not a direct competitor. *Id.* at 136 ("To be sure, a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation.").

### 1.    Novo and Mochi Are Not Direct Competitors.

Novo continues to allege, implausibly, that it competes directly with Defendants, asserting that the parties "serve the same discrete pool of consumers: individuals seeking weight-loss medication containing semaglutide." D.I. 45 ¶ 3. As a matter of law, this is incorrect. The Supreme Court in *Lexmark* cautioned against extending Lanham Act standing to non-competitors, emphasizing that courts must examine the parties' economic relationship—where they sit in the supply chain and who their respective customers are. *Lexmark* 572 U.S. at 131–32. *Lexmark* is particularly apt for the absence of direct competition.[5] Lexmark manufactured laser printers, a component of which were print cartridges. *Id.* at 121. Lexmark wanted control over remanufacturing its own print cartridges, so it installed a disabling chip preventing other companies from remanufacturing Lexmark's print cartridges. *Id.* Static Control did not remanufacture print cartridges or manufacturer printers; it merely sold components used by its remanufacturer customers to remanufacture

---

[4] The issue of injury and causation is inherently redundant in a Lanham Act case, because injury and causation are analyzed for (1) Article III standing, (2) statutory standing, and (3) as elements of each cause of action. However, the degree of scrutiny increases with for statutory standing analysis.

[5] Unlike in *Lexmark*, Novo's SAC does not sufficient allege zone of interest of proximate cause. *See infra* Sections IV(C)(2) and (3).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

Lexmark cartridges. *Id.* Faced with Lexmark's disabling chip, Static Control developed and sold a chip mimicking and overriding Lexmark's chip. *Id.* Remanufacturers could use Static Control's chip to remanufacture Lexmark's print cartridges. *Id.* Lexmark sued, alleging Static Control's mimic-chip violated Lexmark's copyrights. *Id.* at 122. Static Control countersued, alleging Lanham Act violations, claiming Lexmark's own advertising was false and misleading, and that Lexmark sent letters to remanufacturers falsely claiming that Static Control's mimic-chip was illegal. *Id.* at 122-23.

Lexmark and Static Control were not direct competitors; while Static Control's products ***affected*** Lexmark's downstream sales, they occupied different levels of the supply chain—Lexmark sold printers and cartridges to consumers, while Static Control sold the mimic-chip to remanufacturers who were Lexmark's actual competitors. Once a plaintiff falls outside of direct competition, Lanham Act standing depends on a rigorous showing of proximate cause—specifically, confidence that the defendant's conduct caused harm through direct substitution, rather than attenuated or speculative market effects. *Id*. at 133–34. In the absence of direct competition, proximate cause requires "something very close to a 1:1 relationship between the number of refurbished … cartridges sold (or not sold) by the remanufacturers and the number of … microchips sold (or not sold) by Static Control." *Id.* at 139.  The Supreme Court focused on the litigants' respective locations in the supply chain and their respective customers – not common marketing audiences.

Subsequent cases have reinforced that this focus on the supply-chain and direct customers is dispositive. In *BPI Sports*, the Ninth Circuit found that plaintiff Thermolife was not a direct competitor of the defendant BPI because they operated on different levels of the dietary supplement market. *See ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, *2 (9th Cir. Mar. 2, 2022) ("*BPI Sports*"). *Id*. *2. Thermolife licensed and sold use of its ingredients and patented technology to other companies producing dietary supplements. BPI produced and sold finished dietary supplements to consumers. *Id*. In other words, BPI competed with Thermolife's customers, but not with Thermolife itself. Thus, Thermolife could only proceed by plausibly alleging proximate causation through a "1:1 relationship" between its lost sales and BPI's alleged unlawful gains. *Id*. *2. But because ThermoLife acknowledged a crowded market with many competitors, the court found such a direct substitution theory implausible, dismissing the Lanham Act claim. *Id*. *3.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

The same analysis applies here. Novo and Defendants are not competitors as a matter of law. Novo is a drug manufacturer operating at the very top of the pharmaceutical supply chain. It sells drugs to authorized trading partners (e.g., distributors and wholesalers), not to patients or consumers. 21 U.S.C. §§ 360eee–360eee-4[6]. The Drug Supply Chain Security Act prohibits Novo from patient-facing levels of the market, such as dispensing drugs, operating a pharmacy, providing telehealth services, or selling directly to patients. The separation between Novo and Defendants' roles in the supply chain is thus codified by law. By contrast, Defendants occupy various downstream, patient-facing positions. The SAC alleges that Mochi Health operates a telehealth platform and that Mochi Medical consists of affiliated medical groups. D.I. 45 ¶¶ 30, 47, 118. That is, from the perspective of the consumer, the former provides a telehealth system and the latter medical services. Courts have rejected efforts to characterize telehealth platforms as direct competitors of drug manufacturers where physician judgment and independent prescribing decisions intervene. *Amble, Inc.*, 2026 WL 776100, at *2–4.

As in *BPI Sports*, Novo's own allegations place Defendants in different market position within a highly saturated ecosystem of weight loss plans and drugs, making any theory of direct substitution implausible. Ex. D. Novo itself admitted that compounded GLP-1 drugs are not one-to-one substitutes for Novo's drugs, acknowledging that compounded drugs may be used in ways inconsistent with Novo's approved labeling and that their utilization data "should not be understood to represent a 1:1 future demand" for Novo's drugs. Ex. N. Those admissions, foreclose Novo's attempt to plead the kind of direct diversion required under *Lexmark* and *BPI Sports*.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Statements of fact contained in a brief may be considered admissions of the ").

### 2.   Novo is Outside the "Zone of Interests" Protected by the Lanham Act.

Novo must—but fails to—plead a commercial injury.  *Lexmark*, 572 U.S. at 130; *see also ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 18-04189, 2019 WL 3840988, *9 (D. Ariz. Aug. 15, 2019) ("*Am. Fitness*") (plaintiff failed to allege commercial injury outside of the zone of interest). The SAC

---

[6] See *also* FDA, Draft Guidance for Industry: *Identifying Trading Partners Under the Drug Supply Chain Security Act (DSCSA)*, (July 2022), at 3–4. Ex. O.

does not identify any lost consumers, lost sales, or specific reputational harm traceable to Defendants' conduct. Novo alleges that Defendants attract consumers interested in Novo's drugs and then redirect them to compounded drugs. D.I. 45 ¶ 129. But Novo has conceded Mochi Providers *do* prescribe Novo's drugs. *Id.* ¶ 157. The SAC contains no allegation that a patient was actually diverted from Novo's drugs to a compounded drug, thus failing to plead consumer diversion or lost sales.

### 3.    Novo Does Not Establish Proximate Cause for Lanham Act Standing.

Even if Novo's allegations fell within the zone of interest (they do not), Novo does not plausibly proximate cause—that is, "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133–34. Courts routinely dismiss claims for lack of Lanham Act standing where the alleged injury depends on the independent actions of third parties, or where the plaintiff fails to allege a direct causal link between the defendant's conduct and the claimed harm. *See, e.g.*, *Am. Fitness*, 2019 WL 3840988, *7-8 (standing lacking where plaintiff failed to show that lost sales could be fairly traced to defendant, rather than other market factors or third-party decisions).

Courts have repeatedly rejected Lanham Act standing where alleged reputational or sales injuries are proximately caused by an intervening third party. In *Willow*, the court dismissed Lilly's Lanham Act claim, holding that alleged reputational and sales harms were not proximately caused by a telehealth defendant's marketing because the physician's medical judgment was the proximate cause of any alleged patient diversion. *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 25-3570, 2026 WL 639976, *7–8 (N.D. Cal. Feb. 3, 2026). Similarly, in *Amble*, the court found that Novo lacked standing under the Lanham Act because its alleged commercial injury was proximately caused by physicians prescribing medications, not the defendant's advertisements. 2026 WL 776100, *4. Here, the facts are even weaker than in *Willow* and *Amble*, because Novo concedes that Mochi Providers do prescribe Novo's drugs. D.I. 45 ¶ 157.

This case is also materially different from *Novo Nordisk A/S, v. Aios Inc.*, 4:25-cv-06560-YGR (N.D. Cal. March 10, 2026) ("*Fella*"), where the court assumed as true Novo's allegations that the telehealth platform Fella did ***not*** offer Novo's drugs. Ex. P. Distinguishing *Willow*, the *Fella* court ruled that because Fella "does not offer any of Novo Nordisk's FDA-approved semaglutide-containing medicines … Fella Health providers ***cannot*** prescribe Novo's drugs and therefore cannot be the neutral gatekeeper that the *Willow* court envisioned." *Id.* at 6-7 (emphasis added). In *Fella*, then, "steering" was plausible at the

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

pleading stage. *Id.* But here, Novo has conceded Mochi Providers ***do prescribe*** Novo drugs. Like in *Willow*, Novo pleads no facts showing Mochi Health's advertising overrides physician prescribing decisions. Because there is no direct causal link between Mochi Health's advertising and any injury, Novo lacks Lanham Act statutory standing.

**D.**    **<u>Novo Fails to Plead Plausible Claims for Relief.</u>**

Novo's SAC should be dismissed under Rule 12(b)(6) because it fails to plead facts establishing a facially plausible claim for relief. *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). Moreover, because Novo's claims are predicated on allegedly "false," "misleading," and "deceptive" advertising and practices, they sound in fraud and are subject to Rule 9(b)'s heightened pleading standard. *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 847 (9th Cir. 2024); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Novo therefore must plead the "who, what, when, where, and how" of the alleged misconduct, which it fails to do. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Allegations pled "on information and belief" are likewise insufficient absent specific supporting facts. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). The SAC fails to meet Rule 9(b) and, independently, fails under Rule 8(a) to plead a plausible claim for relief. Novo's failure to meet Rule 8(a) is independently fatal. In *Integra*, the Ninth Circuit held that a complaint fails where it alleges "false" conduct, but pleads only inference, speculation, or patterns consistent with lawful behavior, rather than any facts showing actual falsity. *U.S. ex rel. Integra Med Analytics, LLC v. Providence Health & Servs.*, 854 Fed. Appx. 840, 845 (9th Cir. 2021) ("*Integra*").   Integra, a data-analytics company, brought a False Claims Act action alleging that hospitals submitted false Medicare claims by upcoding patient diagnoses to obtain higher reimbursements. *Id*. at 842-43. The complaint relied almost entirely on statistical analyses and alleged that defendant used higher-paying diagnosis codes more frequently than its peers. *Id*. at 843. The relator did not identify specific patient files, individual false claims, or concrete facts showing that any diagnosis was medically unsupported. *Id*.

Reversing the district court's denial of the defendants' motion to dismiss, the Ninth Circuit held that even accepting statistics as true, the complaint failed to plead a plausible claim for relief because it did not "eliminate an obvious alternative explanation" for the alleged conduct: that the defendant was simply more effective at accurate documentation and lawful coding than its peers. *Id*. at 841-842. Where alleged "facts"—

in *Integra*, the statistics—are equally consistent with lawful conduct, the Court explained, they fall short of Rule 8(a)'s plausibility standard and cannot proceed to discovery. *Id*. at 843; *see also Twombly*, 550 U.S. at 557. *Integra* confirms that a plaintiff cannot plead falsity by stacking inferences or by relabeling ambiguity as fraud. *Integra*, 854 Fed. Appx. at 843. When, as here, a complaint alleges "false" or "deceptive" conduct, but fails to plead facts showing why the challenged statements are actually untrue—as opposed to merely unsupported or unfavorable—it stops "short of the line between possibility and plausibility" and must be dismissed under Rule 12(b)(6). *Id*. at 844. Because Novo's SAC relies on the same form of inference-driven pleading, it fails under Rule 8(a) and, independently, Rule 9(b).

### 1.    Novo Fails to Plead Lanham Act (Count I), False Advertising (Count II), and Common Law Unfair Competition Claims (Count IV).

Novo asserts claims under the Lanham Act (Count I), California's False Advertising Law ("FAL") (Count II), and California common law unfair competition (Count IV) based on Mochi Health's website statements about (a) personalization, (b) quality and safety; and (c) use of clinical data. None is adequately pled. To state a Lanham Act claim (Count I), plaintiff must allege: (1) a false statement of fact about its own or another's product; (2) actual or likely deception (3) materiality; (4) introduction into interstate commerce; and (5) injury. *Intuit Inc. v. HRB Tax Grp., Inc.,* No. 24-253, 2025 WL 1168897, *5 (N.D. Cal. Apr. 22, 2025). FAL claims (*Count II*) are "substantially congruent" to Lanham Act claims. *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-3762, 2014 WL 572290, *2 (N.D. Cal. Feb. 11, 2014); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994). Under both statutes, plaintiffs must allege representations likely to deceive a reasonable consumer. *Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 WL 6729802, *1 (C.D. Cal. Dec. 16, 2013); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (requiring statements be evaluated in context and not in isolation). California's common law unfair competition claim (Count IV) imposes a narrower and more demanding standard than Lanham Act or FAL, limited to "passing off" or selling "confusingly similar products." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992). Dismissal is warranted where, as here, allegations are not grounded in passing off or misappropriation. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (affirming dismissal where plaintiff failed to allege defendants "passed off their goods as those of another").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

a.     *Pleading Failures for Lanham Act and FAL (Counts I and II).*[7]

i.     Novo Fails to Allege Literal Falsity (Element 1).

To plead falsity under the Lanham Act or FAL, Novo must allege either literal falsity, or that a literally true statement is misleading in context. *Intuit Inc.*, 2025 WL 1168897, *5. Allegations that statements "lack support" are insufficient; Novo must allege falsity. *Id*; *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672, *6 (C.D. Cal. Aug. 19, 2019). Here, Novo's claims fail both (a) because Mochi Health's statements are literally true; and (b) Novo only alleges Mochi Health's statements "lack support."

(a)     Mochi Health's Statements Are Literally True.

Trying to plead falsity, Novo relies on the same core set of allegations to support all three of its false advertising theories—its "personalization," "quality and safety," and "use of clinical data" theories. Novo points to generalized promotional language on Mochi Health's website and references to Novo's own drugs and related clinical studies; it then asks the Court to infer that Mochi Health is claiming that compounded drugs are FDA-approved, clinically tested, equivalent in safety or efficacy, or uniquely formulated for each patient. D.I. 45 ¶¶ 160–189. But implication stacked on inference is not falsity, and none of Novo's theories can survive Rule 12(b)(6).

Novo does not identify a single statement in which Mochi Health affirmatively represents that compounded semaglutide is FDA-approved, clinically tested, or equivalent to Novo's drugs in quality, safety, or efficacy. D.I. 45 ¶¶ 171–185, 186–191. To the contrary, Novo references a Mochi Health webpage stating that compounded drugs "are ***not*** FDA-approved." Ex. D (cited at D.I. 45 ¶ 130, n. 103) (emphasis added). Generalized marketing language about care, access, or treatment options is not actionable. *See Intuit*, 2025 WL 1168897, *5; *Becerra*, 945 F.3d at 1231; *Dyson, Inc. v. SharkNinja Operating LLC*, 2011 WL 13268034, *11.

Nor can Novo plead falsity by pointing to Mochi Health's references to Novo's drugs, or to published clinical studies concerning Novo's drugs. The SAC's screenshots discuss Novo's FDA-approved drugs (D.I. 45 ¶¶ 175–176), which Novo conceded that Mochi Providers prescribe. Read in context, Mochi Health's

---

[7] Novo fails to properly plead elements (1), (2), (3) and (5) of the Lanham Act. Defendants do not challenge the pleading of element (4) (the statement to enter interstate commerce); however, four of the five elements to state a claim under the Lanham Act are missing.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

materials are meant to educate potential consumers on various treatment options they could obtain, including Novo's drugs. Novo has offered nothing to explain away the more plausible conclusion—that Mochi Providers do in fact prescribe Novo's drugs, which is why the Novo drugs are featured on Mochi Health's website. *See Integra*, 854 Fed. Appx. at 844. Further, referring to semaglutide as clinically studied or FDA approved is not false or misleading because FDA, Novo, researchers, and the general public all colloquially refer to semaglutide as the medication itself. *See* D.I. 45 at 49 (listing studies discussing effects of semaglutide); Ex. T (clinical study on semaglutide); Ex. U (FDA approval letter discussing semaglutide). Further, FDA has specifically permitted the use of the ingredient semaglutide in compounding because it is an API of a commercially available drug. Ex. U; 21 U.S.C. § 353a(b)(1)(A)(i)(II). Evaluated in the proper context, Mochi Health's statements  do not plausibly convey that compounded drugs have been approved by FDA or subjected to clinical trials. D.I. 45 ¶¶ 175-177; *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("when evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context"). Novo's personalization theory fares no better. Novo alleges that Mochi falsely advertises compounded drugs as "personalized" or "custom-prepared" because the drugs are offered in standardized dosages rather than "uniquely" compounded for each patient. D.I. 45 ¶¶ 160–166. Novo's theory, however, misstates the law and the meaning of personalization. Federal law recognizes compounded drugs as "tailored to the needs of an individual patient" when a licensed prescriber determines that a compounded drug is necessary for a patient. 21 U.S.C. § 353a(a)(2); *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 361 (2002). Nothing in the FDCA or state law requires that each compounded medication be uniquely formulated for an individual patient; nor does the use of standardized dosage strengths render a compounded drug "mass-produced" or non-personalized. *Allergan,* 2019 WL 4545960, *11. Novo's attempt to redefine "personalization" to mean bespoke chemical formulation for every patient is unsupported as a matter of law and thus cannot sustain a false advertising claim. Novo therefore fails to plead literal falsity.

(b)    Novo "Lack of Substantiation" Claim Is Insufficient.

Novo also alleges that Mochi Health falsely claimed or implied that compounded semaglutide drugs have been proven safe and effective even though they had not undergone any clinical studies to demonstrate as such. D.I. 45 ¶¶ 182-189. However, this allegation boils down to the claim that Mochi Health's statements

are unsupported, which is not actionable. *Strategic Partners*, 2019 WL 12435672, at *6 (false advertising claim cannot be sustained on "lack of substantiation" grounds); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012); *Bronson v. Johnson & Johnson, Inc.*, No. 12-04184, 2013 WL 1629191, *8 (N.D. Cal. Apr. 16, 2013). Courts have specifically rejected efforts by drug manufacturers to equate lack of substantiation with falsity in compounded GLP-1 advertising disputes. *See Eli Lilly & Co. v. Adonis, Inc. d/b/a Henry Meds.*, No. 25-3536, 2025 WL 2721684, *7-11 (N.D. Cal. Sept. 24, 2025) ("*Henry Meds*") (dismissing Lilly's false advertising claims based on defendant's statements about the safety and efficacy of its products because those statements lack substantiation).[8]

        ii.       Novo Pleads No Facts Showing Consumer Deception (Elements 2 & 3).

Where, as here, there is no allegation of literal falsity, Novo must plead facts showing that consumers are actually misled or likely to be misled by Defendants' statements, and that any such deception is material to a purchasing decision. *See BPI Sports*, 2022 WL 612669, *3; *Shaker*, 2013 WL 6729802, *1; *Intuit Inc.*, 2025 WL 1168897, *8 (dismissing Lanham Act claim where plaintiff failed to allege that the specific deception was material to consumer purchasing decisions); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-1280, 2022 WL 20286688, *7 n.6 (N.D. Cal. Feb. 24, 2022) (falsity and materiality assessed based on "reasonable consumer" standard). Novo's own allegations confirm that patients receiving compounded semaglutide are fully aware they are ***not*** receiving Novo's drugs; none complain of being deceived by any advertising. D.I. 45 ¶¶ 192-196; Exs. L, M. At most, those allegations reflect post-purchase dissatisfaction with compounded semaglutide specifically, not consumer deception. That distinction is dispositive. Consumer disappointment or variability in therapeutic outcomes are not actionable deception, particularly where consumers knowingly take a non-FDA-approved drug. *Becerra,* 945 F.3d at 1231–32 (rejecting claims premised on consumer expectations and post-purchase dissatisfaction).

Novo's theory that consumers were misled because compounded semaglutide allegedly lacks the

---

[8] *Henry Meds*' ruling related to personalization is fact-bound and does not control here. In *Henry Meds*, Lilly alleged Henry marketed compounded tirzepatide as "patient-specific," but sold standardized compounded drugs to all customers. Novo does not plead comparable facts showing that Mochi Health offers standardized treatments to patients; rather, Novo's SAC concedes that Mochi Providers prescribe products including Novo's drugs.

Case No. 5:25-cv-06563-EKL
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

same efficacy data as Novo's drugs rests on the absence of substantiation, not on a false or misleading statement. Novo's reliance on generalized patient survey data unrelated to Mochi (see D.I. 45 ¶¶ 82–87) does not cure this defect. As the Ninth Circuit has repeatedly held, survey evidence cannot salvage a claim where the challenged statements are not false or misleading. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (survey showing some consumers misunderstood "diet" label on Diet Dr. Pepper did not make deception claim plausible); *McGinity v. Procter & Gamble Co.,* 69 F.4th 1093, 1099 (9th Cir. 2023) (survey showing consumer confusion about "Nature Fusion" label did not make plausible a claim where the label was ambiguous and clarified by other packaging); *Genus Lifesciences Inc. v. Lannett Co.*, 2019 WL 4168958, *6 (N.D. Cal. Sept. 3, 2019) (survey evidence must be tied to the challenged statements and cannot ascribe a misleading meaning to an otherwise accurate statement). Novo did not commission any survey of Mochi Health's actual advertising or statements but instead attempts to draw sweeping conclusions from unrelated studies. D.I. 45 ¶¶ 160–178. Because Novo fails to plead facts showing that Mochi Health's statements actually misled consumers or were material to purchasing decisions, its claims fail as a matter of law.

iii.      Novo Failed to Plead Injury (Element 5).

As noted above, Novo lacks standing because it fails to specifically plead any link between any allegedly false advertisement and supposed injuries. For the same reason, Novo cannot meet element (5)— likelihood of an injury from the false statement by diversion of sales or by a lessening of the goodwill. *See Am. Fitness*, 2019 WL 3840988, *9 (failure to allege causal link between false advertising and injury warranted dismissal); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 946–47 (S.D. Cal. 2016) (plaintiff must allege injury to commercial interest in reputation or sales proximately caused by defendant's misrepresentations). Thus, Novo's UCL, FAL and common law unfair competition claims also fail.

b.      *Novo Fails to Plead Common Law Unfair Competition (Count IV).*

The common law unfair competition tort is limited to "passing off" or selling "confusingly similar products." *Bank of the West*, 2 Cal. 4th at 1263. Novo's claim relies on broad, conclusory assertions that Defendants "exploit Plaintiffs' goodwill and reputation" and "create confusion," without alleging Defendants misrepresented compounded drugs as Novo's or that consumers were misled. *See, e.g.,* D.I. 45

¶¶ 189–191. Instead, Novo speculates that consumers *might* be confused by accurate descriptions of Novo's drugs, but concedes patients know they're receiving compounded semaglutide. D.I. 45 ¶¶ 128-130, 158; Ex. L, M. That is not enough to survive dismissal. *See Sybersound Records*, 517 F.3d at 1153 (affirming dismissal where plaintiff failed to allege defendants "passed off their goods as those of another"). As with *Integra*, Novo did not explain away the more plausible conclusion—that Mochi Providers do in fact prescribe Novo's drugs, which explains the Novo drug pictures on the website. 854 Fed. Appx. at 844. Further, Novo does not allege that Mochi Medical specifically engaged in any advertising or made any allegedly false or misleading statements to consumers. Instead, Mochi Medical is accused *only* of aiding Mochi Health's alleged corporate practice of medicine violations—conduct that does not constitute independent "passing off" or competitive misconduct under California common law. The common-law unfair competition claim against Mochi Medical should be dismissed.

### 2.    Novo Fails to Plead a Cause of Action Under the UCL (Count III).

Novo's UCL claim alleges that Mochi Health unlawfully engaged in CPOM and prescribed drugs (D.I. 45 ¶ 221), and that Mochi Medical aided and abetted.[9] *Id.* ¶ 223. But to have UCL standing, Novo must have "suffered injury in fact" and "lost money or property as a result of" Defendants' wrongful conduct. Bus. & Prof. Code, § 17204. Because Novo fails to plausibly plead any injury in fact under Article III, it cannot meet the "more stringent" UCL requirements. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 324 (2011). Novo also does not allege facts connecting Defendants' alleged CPOM and any injury to Novo. *Fella*, Ex. P at 7-8 (dismissing UCL claim based on alleged CPOM violation, noting Novo had not alleged how Fella's CEO being a non-physician, or corporate employees providing patients with medical advice *en masse*, caused harm *to Novo*). Novo's conclusory allegations fail to establish that any Defendant engaged in any business practices that are (a) unlawful, (b) unfair, or (c) fraudulent, as required to state a UCL claim. Cal. Bus. & Prof. Code § 17200.

*No Unlawfulness.* Novo's allegation that Mochi Health unlawfully engaged in CPOM rest on conclusory assertions, not plausible facts. Novo claims Mochi Health exerted undue influence over Mochi

---

[9] Notably, Florida—where Mochi Medical P.A. operates—does not even prohibit CPOM. *See* Ex. Q ("Florida Statutes [do not] prohibit a Florida licensed physician employed by a corporation from practicing in Florida under such an arrangement").

Medical but fails to identify conduct that constitutes a CPOM violation. The alleged acts—advertising a network of doctors, posting job openings on Mochi Medical's behalf, and providing a customized electronic medical record system (D.I. 45 ¶¶ 130, 131, 134)—are lawful, commonplace administrative functions. Crucially, Novo does not allege that Mochi Health usurped hiring or firing authority, dictated diagnostic tests or controlled physicians' prescribing decisions. Instead, the SAC describes conduct California law permits MSOs to perform. *Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504, 517 (2015) (no CPOM violation where MSO handled medical practice's marketing, billing, collections, and accounting, and did not exercise control over the doctor's practice of medicine).

Novo similarly fails to plead facts supporting its claim that Mochi Health unlawfully prescribed medications without medical justification. Based solely on a Reddit post reflecting that Mochi Health *publicized* changes to the dosage schedule (Ex. G), Novo claims that Mochi Health unilaterally *compelled* prescription changes. *Id.* ¶¶ 140-141. But Novo immediately contradicts itself, alleging that drug dosage was driven by individual patient decisions. *Id.* ¶¶ 143-144. Novo further mischaracterizes Reddit posts as evidence of Mochi Health's control over prescriptions, when they only describe decisions made by providers or pharmacists. Ex. R, cited at D.I. 45 ¶¶ 147-148. Notably, Novo does not allege that Mochi Health ever overrode the a prescriber's decisions.

These allegations fall short of cases where courts have found CPOM violations adequately pled. In *American Academy of Emergency Medical Physician Group, Inc. v. Envision Healthcare Corp.*, the plaintiff alleged that the corporate entity controlled (1) physicians to hiring and fiinge, their compensation, work schedule and conditions, and their number of patient encounters; (2) negotiated with third-party payors and insurers without physicians' knowledge; (3) held the rights to the proceeds of medical billings, and made coding and billing decisions without physicians' knowledge; and (4) forced physicians to sign non-compete agreements. No. 22-421, 2022 WL 2037950, *4-5 (N.D. Cal. 2022). Novo's claims bear no resemblance to those allegations. Accordingly, Novo fails to plead the unlawful prong of the UCL. Novo also fails to allege how any purported CPOM violations—advertising job openings or announcing dosage changes—caused Novo to be harmed.

**No Unfairness.** Novo does not make any factual allegations supporting the "unfair" prong of the UCL. As a purported competitor, (not consumer), Novo must allege conduct (1) that threatens an incipient

violation of an antitrust law, (2) violates the policy or spirit of one of those laws, or (3) otherwise significantly threatens or harms competition. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 182, 187 (1999). Allegations of individualized harm are insufficient to establish the requisite threat to competition. *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 501 (2011). Novo alleges none of these predicates. Nor could it plausibly do so, because Mochi Health lacks market share in, or have the ability to meaningfully impact, the weight-loss drug space.

*No Fraud.* As argued above, Novo's failure to plead fraud with specificity under Rule 9(b) is fatal to its Lanham Act, FAL, and UCL fraud claims. *Kwan Software*, 2014 WL 572290, *3 (The fraud prong of the UCL is subject to the same analysis as these causes of action); *Cleary*, 30 F.3d 1255 (same).

### E. The SAC Should Be Dismissed Under Abstention and Primary Jurisdiction

Further, the Court should decline Novo's invitation to usurp the authority of administrative agencies and interfere with their ongoing investigations. Under the California doctrine of abstention, courts may abstain from adjudicating a matter where the issues "implicate technical or policy determinations usually reserved to an administrative agency." *Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609 (2012); *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007) (courts should abstain from matter that "would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency"). Under the federal *Burford* abstention doctrine, a federal court must decline equitable claims where (1) "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). Further, under the related doctrine of primary jurisdiction—which has both federal and state analogues—a court may dismiss a claim that "implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority …." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008); *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 390 (1992) (primary jurisdiction applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). Whether Mochi Health made false or misleading statements about

a compounded drug (Counts I & II) is a matter that requires the expertise of FDA and the Pharmacy Board. Whether Mochi Health engaged in the unlicensed practice of medicine (Count III) is a matter reserved for the Medical Board. Accordingly, these counts should be dismissed.

The Court should decline to adjudicate the Lanham Act and FAL claims under the doctrine of primary jurisdiction because doing so would interfere with FDA and the California Pharmacy Board's functions. Novo incorrectly claims that Defendants made false statements related to the safety and efficacy of compounded semaglutide. D.I. 45 ¶¶ 181-185. However, FDA alone may enforce provisions of the FDCA, including those prohibiting the false or misleading advertisement of a compounded drug (*see* 21 U.S.C. § 352(bb)), and governing the ingredients used in compounded drugs. *See id.* § 353a(b). Similarly, the Pharmacy Board is tasked with enforcing regulations governing what constitutes the false and misleading advertisements of drugs. *See* Cal. Health & Saf. Code § 110390. In fact, Novo admits that FDA, the Pharmacy Board, and other agencies are already investigating the marketing of compounded drugs, and have issued public reports of related adverse events. D.I. 45 ¶¶ 64-71, 77-80. Novo also concedes that the majority of state Attorneys General have referred such matters to FDA instead of initiating legal action themselves. *Id.* ¶ 70. The Court should follow the lead of state AGs, and permit agencies with the requisite expertise investigate and establish uniform standards on compounded semaglutide. *See Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014) (applying primary jurisdiction in part because FDA was investigating); *Backus v. General Mills, Inc.*, 122 F.Supp.3d 909, 934 (N.D. Cal. 2015) (applying primary jurisdiction in part because FDA was reviewing). In addition, the Court should also dismiss the FAL claim because the Pharmacy Board should be allowed to establish a coherent state policy on compounded drug advertising. *See Colorado River*, 424 U.S. at 814.

The Court should also apply the doctrines of abstention and primary jurisdiction to dismiss Novo's UCL claim, which alleges that Mochi Health (a telehealth company and MSO) is competing unfairly with Novo (a multinational drug company) by unlawfully practicing medicine and prescribing compounded drugs without an "appropriate prior examination and a medical indication." D.I. 45 ¶¶ 155, 221. The practice of medicine is subject to state police powers, and not the province of federal courts absent serious constitutional concerns. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1125 (9th Cir. 2004); *Linder v. United States*, 268 U.S. 5, 18 (1925). Adjudicating what constitutes "appropriate prior examination" and "medical indication" in the

context of prescribing drugs via telehealth is a task the California Legislature specifically delegated to the Medical Board. *See Med. Bd. of Cal. v. Chiarottino*, 225 Cal. App. 4th 623, 629 (2014) ("[Medical] Board is specifically charged with enforcement of the Medical Practice Act" including for "furnishing prescription drugs without an appropriate prior examination and medical indication"); *Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352, 356 (2023) (investigating prescriptions for whether they were "medically necessary and within the standard of care"); *Grafilo v. Soorani*, 41 Cal. App. 5th 497, 502 (2019) (same). Similarly, the Medical Board is empowered to enforce, and does enforce, CPOM. *See* Cal. Bus. & Prof. Code § 2400; Ex. I. Here, Novo's unfair competition claim pertains to Mochi Providers' prescribing practices and Mochi Health's purported corporate practice of medicine. D.I. 45 ¶ 221. Adjudicating these claims require precisely the type of policy determinations that the law entrusts to the Medical Board. In fact, the Medical Board is already investigating whether Defendants engaged in conduct including the "unlicensed/corporate practice of medicine." Ex. S. The Court should permit this state effort to resolve a difficult policy problem and establish a coherent policy on telehealth to proceed without disruption. *See Colorado River*, 424 U.S. at 814.

Finally, courts should refrain from deciding cases demanding "networks of injunctions" and a "long-term monitoring process." *Alvarado*, 153 Cal. App. 4th at 1306. Here, Novo seeks to enjoin numerous individuals affiliated with Defendants across California and Florida from engaging in false advertising, such by stating that compounded drugs obtained through Mochi Health have been shown to "achieve therapeutic results." D.I. ¶ 45 at 64. In other words, as the science and regulations surrounding these novel drugs evolve, the Court must evaluate each advertisement to determine whether they are true or otherwise appropriate. In doing so, the Court would act as a roving regulatory body monitoring medical and pharmacy practices in perpetuity across not just one, but at least two states. The Court should decline to take on such functions meant for agencies like FDA and state pharmacy boards. *See Alvarado*, 153 Cal. App. 4th at 1306 (abstaining in a case requiring "injunctions across the State of California," finding the task more suited for an agency).

## V.    CONCLUSION

For the foregoing reasons, this Court should grant dismiss Plaintiffs' SAC with prejudice.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

DATED:  April 10, 2026                    HOOPER, LUNDY & BOOKMAN, P.C.


                                          By:        */s/ Joseph R. LaMagna*
                                          _____
                                                  JOSEPH R. LAMAGNA
                                          Attorneys for Defendants MOCHI HEALTH CORP.;
                                          MOCHI MEDICAL CA P.C.; and MOCHI MEDICAL
                                          P.A.

DATED:  April 10, 2026                    BLANK ROME LLP


                                          By:        */s/ Rachael Pontikes*
                                          _____
                                                  RACHAEL PONTIKES (P*ro Hac Vice*)
                                          Attorneys for Defendants MOCHI HEALTH CORP.;
                                          MOCHI MEDICAL CA P.C.; and MOCHI MEDICAL
                                          P.A.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April 2026, I have electronically filed the foregoing DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel on the CM/ECF list for this case.


   */s/  Joseph R. LaMagna*
JOSEPH R. LAMAGNA

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS